IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JEFFREY W. CAMPBELL,

      Plaintiff,

v.   CV 14-496 JB/WPL

LIEUTENANT J. BACA, SERGEANT R. BLEA,
SERGEANT M. ALFO,[1] R. KEATON, LPN, and
T. SALINAS, RN,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Jeffrey Campbell, a prisoner incarcerated by the New Mexico Corrections Department ("NMCD"), filed a complaint against several correctional officers and medical providers pursuant to 42 U.S.C. § 1983. (Docs. 1, 8.) Campbell alleges violations of his Fourth, Fifth, and Eighth Amendment rights stemming from delay of medical care and withholding of personal property. This matter is before me on four motions: two from Campbell and two from the Defendants. Campbell filed a Motion for Temporary Injunction (Doc. 12) and a Request for Subpoena (Doc. 23). Keaton and Salinas ("the Corizon Defendants"[2]) filed a *Martinez* Report and Motion for Summary Judgment (Doc. 26); Baca, Blea, and Arceo ("the GEO Defendants"[3])

---

[1] The Defendants indicated that "Sergeant M. Alfo" is really Sergeant M. Arceo. (Doc. 27 at 1.) I use "Sergeant Arceo" or "Arceo" and invite the Defendants to move to change Arceo's name in the case caption.

[2] Keaton and Salinas are both nurses at the Guadalupe County Correctional Facility ("GCCF"). Keaton and Salinas do not work for NMCD, but are employed by Corizon, Inc., a contractor at GCCF that provides medical services.

[3] Baca, Blea, and Arceo are employees of the GEO Corporation, a private contractor that operates GCCF for NMCD, and worked at GCCF as corrections officers during the relevant period.

also filed a *Martinez* Report that they request be construed as a motion for summary judgment (Doc. 27).

Having considered the filings and the relevant law, and being otherwise fully advised on these matters, I recommend that the Court dismiss all of Campbell's claims with prejudice because he failed to exhaust available administrative remedies, deny Campbell's Motion for Temporary Injunction, and deny Campbell's Request for Subpoena as moot.

## BACKGROUND

The basic facts of the case are undisputed. In November 2013, Campbell was housed at the Guadalupe County Correctional Facility ("GCCF"). Campbell got into a fight with some other inmates on November 27, 2013. He went to the medical unit at GCCF, but was not taken to a hospital at that time. Sometime on November 29, 2013, Campbell was taken to a local hospital. A CT scan revealed two jaw fractures, which the facility could not treat. Campbell was taken to the emergency room at the University of New Mexico Hospital ("UNMH") in Albuquerque. He was admitted to UNMH's emergency department around 5:00 a.m. on November 30, 2013. Campbell had surgery on November 30, 2013, to repair the fractures in his jaw and implant surgical hardware to help fuse the bones. The area around the hardware became infected, which required several months of antibiotic treatments. Campbell had a second surgery on May 7, 2014, to remove the surgical hardware.

Campbell initially named GCCF; Corizon Medical Services, which provides medical services at GCCF; and the GEO Group, which operates GCCF, as defendants. (*See* Doc. 1.) Campbell then submitted an amended complaint naming Keaton, Salinas, Baca, Blea, and Arceo as defendants. (Doc. 8.) The Court dismissed the entity defendants on January 30, 2015. (Doc. 13.)

Campbell brings four claims. Where it is unclear against which Defendants Campbell has brought a claim, I assume that Campbell brought that claim against all Defendants. Count One comes under the Eighth Amendment for deliberate indifference with regard to medical treatment. (*See* Doc. 1 at 4.) Count Two charges that GCCF and Corizon failed to equip GCCF with adequate medical facilities to ascertain the nature of his injuries. (*Id.* at 5-6.) Count Three alleges that GCCF staff violated Campbell's Fourteenth Amendment due process rights by seizing undescribed documents and property from Campbell shortly before or after his November 30, 2013, hospitalization, not returning said documents and property for 120 days, and failing to return certain undescribed documents and property at all. (*Id.* at 7-9, 12.) Count Four claims that GCCF staff failed to follow NMCD procedures and did not notify Campbell's family of his well-being or personal property, allegedly in violation of Campbell's Fourth and Fifth Amendment rights.

The parties agree that, at all times relevant to this litigation, Campbell was incarcerated in New Mexico and a "prisoner" for purposes of the Prison Litigation Reform Act ("PLRA").

### SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The record and all of its reasonable inferences must be viewed in the light most favorable to the nonmovant. *Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

While the moving party bears the burden of showing that there are no genuine disputes of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986) (citations omitted). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party makes this showing by presenting "facts such that a reasonable jury could find in [its] favor." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

In a case such as this, where the burden of persuasion at trial would be on the nonmovant, the movant can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the nonmovant's claim or (2) showing the Court that the nonmovant's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 331. Evidence provided by either the movant or the nonmovant need not be submitted "in a form that would be admissible at trial." *Id.* at 324. Rather, the content of the evidence presented must be capable of being presented in an admissible form at trial. *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006). For example, parties may submit affidavits to support or oppose a motion for summary judgment, even though the affidavits constitute hearsay, provided that the information can be presented in an admissible form at trial, such as live testimony. *Trevizo*, 455 F.3d at 1160; *see* FED. R. CIV. P. 56(c)(4). In providing factual support for a summary judgment motion, a party may provide the Court with an affidavit or declaration, provided that such a document is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. at 56(c)(4).

For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall*

*v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citation omitted). A *Martinez* report is also treated as an affidavit, and this report can be used in determining whether to grant summary judgment. *Id.* at 1110-11 (citations omitted). A bona fide factual dispute exists even when a pro se plaintiff's factual allegations that are in conflict with the defendant's affidavits are less specific or well-documented than the contentions of the defendant. *See Hall*, 935 F.2d at 1109. Conclusory and self-serving allegations without facts that would be admissible in evidence do not create a material factual dispute that would preclude summary judgment. *Id.* at 1111; *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010) ("Unsupported conclusory allegations . . . do not create a genuine issue of fact." (quotation omitted)); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) ("We have long held that conclusory allegations without specific supporting facts have no probative value." (quotation omitted)).

Campbell proceeds pro se. As with all pleadings filed by pro se individuals, the Court must liberally construe the allegations contained in Campbell's complaints. *Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, the Court must apply the same legal standards used for pleadings drafted by counsel. *Id.*

## DISCUSSION

The GEO Defendants raise four arguments in their motion for summary judgment that, they claim, entitle them to judgment as a matter of law as to all claims against them. The GEO Defendants argue that 1) Campbell failed to exhaust his administrative remedies as required by the PLRA, 2) Cambell failed to specifically allege each GEO Defendant's personal involvement in the claimed constitutional violations, 3) the undisputed facts demonstrate that the GEO Defendants did not violate Campbell's constitutional rights, and 4) Campbell has not alleged and

cannot demonstrate that any policy or custom of GEO was the moving force behind the alleged violation of his constitutional rights.

The Corizon Defendants raise two arguments in their motion for summary judgment that, they claim, entitle them to judgment as a matter of law as to all claims against them. The Corizon Defendants argue that Campbell failed to exhaust his administrative remedies as required by the PLRA and the New Mexico analog, N.M. STAT. ANN. § 33-2-11(B), and that Campbell failed to establish an Eighth Amendment violation.

Because I conclude that Campbell failed to exhaust available administrative remedies with regard to any of his claims, I do not reach the Defendants' other arguments.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision requires a prisoner to exhaust available administrative remedies before filing suit, even if those remedies cannot provide the type of relief the prisoner seeks. *See Booth v. Churner*, 532 U.S. 731, 734 (2001); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). It also requires "proper" exhaustion, which means that prisoners must "complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). These rules are prescribed by individual prison grievance procedures, not by the PLRA. *Id.*

The Tenth Circuit has held that a plaintiff who begins the grievance process but does not complete it has not exhausted his administrative remedies and is barred from bringing a § 1983 action. *Jernigan*, 304 F.3d at 1032. The doctrine of substantial compliance does not apply to the exhaustion requirement, and giving notice to prison officials by means other than the established

grievance process is not sufficient to exhaust available administrative remedies. *See id.* Failure to exhaust under the PLRA is an affirmative defense and, therefore, the defendant bears the burden of proof. *Jones*, 549 U.S. at 216-17; *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). A defendant must prove both that 1) administrative remedies were available to the plaintiff and 2) the plaintiff failed to exhaust the available remedies. *Purkey v. CCA Det. Ctr.*, 263 F. App'x 723, 726 (10th Cir. 2008) (unpublished).

Though there are no exceptions to the exhaustion requirement of the PLRA, the statute is clear that an inmate is required to exhaust only those remedies that are "available." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011). The Tenth Circuit has held that a remedy is "available" when it is "capable of use for the accomplishment of a purpose." *Id.* (quotation and citation omitted). A remedy is not available if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). Remedies are also deemed unavailable when a prison official's failure to timely respond to the grievance renders administrative remedies unavailable, *Jernigan*, 304 F.3d at 1032, and when using the administrative process "will result in serious retaliation and bodily harm," *Tuckel*, 660 F.3d at 1252.

Like the PLRA, N.M. STAT. ANN. § 33-2-11(B) (West 2015) requires an inmate to exhaust NMCD's internal grievance procedure before bringing a civil action under the laws of New Mexico.

At all times relevant to this lawsuit, GCCF and NMCD had inmate grievance procedures in place. (*See* Doc. 26 Ex. D at 2, Affidavit of Larry Phillips, Statewide Grievance Administrator Coordinator for the State of New Mexico (explaining the grievance procedure); Doc. 27 Ex. J, Affidavit of Krystal Rivera, Grievance Lieutenant at GCCF (same).) The Inmate Grievance

procedure has three steps: 1) an informal complaint within five days of the incident in question, addressed to the inmate's Unit Manager; 2) if the informal complaint fails to resolve the situation within five working days, a formal grievance must be filed within twenty days of the incident and submitted to the facility's Grievance Officer, who has twenty working days to conduct an investigation and make a report to the Warden, who then has fifteen working days to issue a decision; and 3) an appeal to the Office of the Secretary of Corrections within seven days of receiving the decision from the Warden. (Doc. 26 Ex. D-1, CD-150500 and CD-150501; Doc. 27 Ex. J, Affidavit of Krystal Rivera.) NMCD defines "[e]xhaustion of [a]dministrative [r]emedies" as "[t]he completion of the grievance process through the Department level appeal." (Doc. 26 Ex. D-1 at 2, CD-150500; Doc. 27 Ex. G at 2 (same).)

### I.     The GEO Defendants

The GEO Defendants argue that Campbell failed to follow the grievance procedure with regard to any of his claims, and that his claims are therefore barred under the PLRA. In particular, the GEO Defendants rely on the affidavit of Krystal Rivera, the Grievance Lieutenant at GCCF, for the fact that Campbell did not file a single grievance while incarcerated at GCCF and did not file any grievances with GCCF after being transferred to another facility. (Doc. 27 Ex. J at 2.)

In response to the GEO Defendants' *Martinez* Report and motion for summary judgment, Campbell produced two informal grievances and a formal grievance related to the property claim, but no other evidence that Campbell ever pursued an administrative remedy or was otherwise excused from doing so.

Campbell submitted a "Notice of Claim" from the Risk Management Division of the New Mexico General Services Department, dated February 18, 2014, that informed Campbell that the

Risk Management Division did not insure GCCF and that his claim would be forward to the GEO Group. (Doc. 32 Ex. 1 at 4.) It is unclear what this claim was about. Campbell also produced a letter from Benjamin Lujan, an administrative law judge with NMCD, dated February 10, 2014, stating that Campbell must follow NMCD's grievance procedures in order for his grievance to be reviewed. (*Id.* at 5.) Judge Lujan also informed Campbell that "[o]n-going issues are not considered grievances due to not being specific as to the particular incident date." (*Id.*) Presumably, this sentence referred to Campbell's claims of lost property.

According to documentation that Campbell submitted, he filed an Inmate Informal Complaint on June 14, 2014, regarding his lost property. (*Id.* at 9.) Campbell claimed that the date of the incident was June 8, 2014. (*Id.*) Campbell filed another Inmate Informal Complaint about his property on June 20, 2014 (*Id.* at 7), and submitted an Inmate Grievance on July 7, 2014 (*Id.* at 6.) In his Inmate Grievance, Campbell stated that it took four months to locate his property after the altercation and subsequent medical treatment between November 27 and December 1, 2013, and that some of the property was still missing. (*Id.*) Judge Lujan returned the grievance as being untimely. (*Id.*)

With regard to the medical and failure to notify claims, Campbell never filed an informal grievance or any other administrative proceeding with NMCD. NMCD policy clearly requires that Campbell file these reports. *See* CD-150501. Even assuming that Campbell had a valid reason to delay commencement of the administrative process due to injury or infirmity and that grievances could have been submitted timely sometime during or after Campbell's convalescence, Campbell failed to do so. The law is clear: inmates are required to properly complete the facility's grievance procedure. *Jones*, 549 U.S. at 218. Campbell failed to complete any portion of the administrative procedures with regard to the medical and failure to notify

claims, and these claims are therefore barred by the PLRA. I recommend that the Court dismiss the medical and failure to notify claims without prejudice as they relate to the GEO Defendants.

With regard to the property claim, Campbell did not file an informal grievance until June 14, 2014. (Doc. 32 Ex. 1 at 9.) Assuming that Campbell is correct—that his property disappeared after the altercation on November 27, 2013, and was returned approximately 120 days later (*see* Doc. 1 at 12), on or around March 27, 2014—and that filing his grievance after the return of his property would have been timely, he still failed to comply with NMCD grievance procedures. Campbell needed to file his informal inmate grievance within five days of the incident. Assuming that the incident ended when Campbell received his property back, he needed to file an informal inmate grievance sometime in early April 2014. Campbell filed his first informal grievance more than two months after the incident, which is well beyond the five-day allotment to file an informal grievance. Campbell does not attempt to argue as to why he did not file an informal grievance after the return of his property or at any time while the property was missing.

It is unclear whether Campbell would be able to file an informal grievance with regard to the allegedly still missing property after it is returned or if the time for filing a grievance began to run upon his discovery that the property was missing. This is immaterial, however, because the PLRA requires that inmates exhaust administrative procedures before filing suit. Campbell filed this lawsuit on or around May 23, 2014—twenty-two days before he filed his initial informal grievance. Campbell failed to satisfy this provision of the PLRA.

Because Campbell failed to file an informal grievance in a timely manner, he failed to exhaust the administrative remedies available to him. Failure to exhaust available administrative remedies is a complete procedural bar under the PLRA. Therefore, I recommend that the Court

dismiss the property claim, Count 4, without prejudice as to the GEO Defendants for failure to exhaust administrative remedies.

## II.     The Corizon Defendants

The Corizon Defendants contend that Campbell failed to file any medical grievances and therefore failed to exhaust available administrative remedies as required by the PLRA. Additionally, the Corizon Defendants contend that, to the extent Campbell has brought state law claims against them, Campbell also failed to exhaust available administrative remedies.

In his response to the Corizon Defendants' *Martinez* Report and motion for summary judgment, Campbell again cites to correspondence with the Risk Management Division for the proposition that he complied with administrative requirements. (Doc. 29 at 2.) Campbell also cites to N.M. STAT. ANN. § 33-1-17 (West 2015) for the proposition that the contractor—in this case, Corizon—assumes all liability caused by operating a prison facility. The problem with Campbell's argument is two-fold: first, the PLRA and the New Mexico analog contain no exceptions to the exhaustion requirement and Campbell did not adduce any evidence suggesting that he availed himself of, much less exhausted, administrative procedures; and second, Corizon as an entity has already been dismissed from this case (*see* Doc. 13).

As described above, Campbell never filed a grievance of any kind with regard to his medical claims. (*See also* Doc. 26 Ex. D at 3 ("I performed a search of my database. The search revealed that [Campbell] did not file an appeal for any grievance concerning medical care. Any appeal filed during the time frame mentioned in the lawsuit would appear in my database." (emphasis omitted)).) Because Campbell failed to complete any portion of the administrative procedures with regard to his medical claims as to the Corizon Defendants, these claims are

therefore barred by the PLRA. I recommend that the Court dismiss any medical claims without prejudice as they relate to the Corizon Defendants.

## TEMPORARY INJUNCTION

Campbell requests that this Court order NMCD to keep Campbell at the Central New Mexico Correctional Facility for the remainder of his incarceration, to prevent him from being transferred to or housed in any facility operated by the GEO Corporation, and to keep Campbell at the Central Minimum Restriction Unit for "medical purposes as needed." (Doc. 12.) The Defendants did not respond to this motion.

To be entitled to a temporary injunction, the movant must prove: 1) a substantial likelihood of success on the merits of the case; 2) irreparable injury if the injunction is denied; 3) the threatened injury to him outweighs the injury to the other party if the injunction is granted; and 4) the injunction is not adverse to the public interest. *See Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001). Because a temporary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal. *See id.*

Based on the foregoing discussion, it is unlikely that Campbell will succeed on the merits of this case. Campbell did not point to any irreparable injury if the injunction were to be denied. It is unclear what the burden would be to NMCD if the injunction were to be granted. However, NMCD is not a party to these proceedings and had no opportunity to respond to Campbell's motion. Perhaps most relevantly, however, absent a showing of irreparable injury, the federal judiciary is not in the business of telling the State's Corrections Department where to house its individual inmates. On balance, the *Kikumura* factors cut against granting Campbell's request. Therefore, I recommend that the Court deny Campbell's Motion for Temporary Injunction.

**REQUEST FOR SUBPOENA**

Campbell requested an order requiring Aaron Vigil, Deputy Warden at the Central New Mexico Correctional Facility, to produce photographs taken of Campbell's injuries. (Doc. 23.) A review of Campbell's responses to the Defendants' *Martinez* Reports includes pictures of his injuries. (Doc. 29 Ex. 2 at 17-18; Doc. 29 Ex. 3 at 2-3; Doc. 32 Ex. 1 at 15; Doc. 32 Ex. 2 at 1, 6-7.) Additionally, Baca, Blea, and Arceo included relevant photographs in their *Martinez* Report. (Doc. 27 Ex. 3 at 1-4.) It appears that Campbell has received the photographs he requested. Therefore, I recommend that the Court deny Campbell's Request for Subpoena (Doc. 23) as moot.

**CONCLUSION**

I conclude that Campbell failed to exhaust administrative remedies with regard to all of his claims against all of the Defendants. Campbell failed to adduce evidence creating a genuine issue of material fact as to the exhaustion requirements. Additionally, I find that Campbell failed to establish the need for a temporary injunction. Finally, I find that Campbell received the photographs he requested in his request for subpoena and that the request is therefore moot.

Therefore, I recommend that the Court GRANT the Corizon Defendants' motion for summary judgment (Doc. 26) and GRANT the GEO Defendants' motion for summary judgment (Doc. 27). I recommend that the Court DENY Campbell's Motion for Temporary Injunction (Doc. 12), and DENY AS MOOT Campbell's Request for Subpoena (Doc. 23). Finally, I recommend that the Court DISMISS all claims against all Defendants without prejudice.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*William P. Lynch*
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.